PITCAIRN v. TOWN OF CHESTER et al.

(Circuit Court, N. D. West Virginia. March 9, 1905.)

STREETS—DEDICATION—ACCEPTANCE—EVIDENCE.

> Where a space in an outlying town addition for a street was marked "closed" on the plat as recorded, and the owner of the land promptly asserted his ownership over it whenever occasion required, and it was never improved by the town, and used by the public only as outlying property connected with the town, there was no dedication thereof sufficient to subject it to a highway easement.

In Equity.

V. B. Archer, for complainant.

B. M. Ambler, for defendants.

JACKSON, District Judge. On the 22d day of June, 1903, John Shrader and wife conveyed a parcel of land situate where the town of Chester is located, in the county of Hancock, being a strip of land 35 feet in width, and commencing at the north line of Carolina avenue, 15 feet distant from the west line of First street, running thence in a northerly direction, preserving the same width, to the south line of Virginia avenue, upon which there was located one wooden bridge. On the 22d day of June, 1901, John Shrader and wife conveyed the same to Thomas C. Pitcairn, and lots No. 71 and 72, as there shown on the plan of lots of the town of Chester, as laid out by James E. McDonald and John Shrader. The deed is of record in the office of the clerk of the county court. On the 21st day of February, 1901, John Shrader and wife conveyed to Thomas C. Pitcairn lots 45 and 46, as shown on the plat of the town of Chester. It also appears that John Shrader purchased in the year 1896 an undivided one-fourth interest in the land where Chester is now located. In 1897 Shrader purchased from James E. McDonald the undivided three-fourths interest in the land in the town of Chester, whereby he became the owner of all the lots mentioned in said town of Chester that had not been previously conveyed to third parties. The bill filed in this case is to prevent the town of Chester from interfering with the rights of the plaintiff, who claims, under John Shrader, that portion of the streets claimed to be First street, 30 feet of which was claimed to be reserved as a passageway to the bridge. It is claimed that street was never opened, and that when the plat was filed the words marked "Closed" were on the plat. It is also claimed that the strip of 15 feet wide each side of 30 feet was left to prevent a coterminous owner from using the street. The plaintiff in this case swears that his deeds cover lots Nos. 71 and 72, and also what is known as First street in the town of Chester, and also cover the lots Nos. 45 and 46 in Shrader's third plan of lots, and are a part of the land included in the deeds. John Shrader testifies that lots Nos. 71 and 72, 45, and 46 were sold to Thomas C. Pitcairn. Shrader also testifies that the lots were conveyed by James E. McDonald and Annie C. McDonald, his wife, to him, and also testifies that the wooden bridge is located on the 30-foot street. It appears from the evidence that the alleged plat claimed to be

the plan of the streets and alleys of the town of Chester was recorded August 1, 1896, and was subsequently recorded on the 25th day of September following; the only difference being that there was an acknowledgment upon the plat that was last recorded that James E. McDonald conveyed to John Shrader one undivided fourth interest in all of the lots designated on the plat on the 25th day of June, 1896, before said plat was recorded. The recordation of these plats may be considered as a first effort of dedication of the streets and alleys in the town of Chester. It appears from the plat last recorded that the street called First street was marked "Closed." Before the plat was recorded or filed in the office of the county clerk John Shrader had acquired one-fourth of the property upon which the town of Chester was located.

There is no evidence tending to show that John Shrader ever dedicated that portion of First street claimed by the plaintiffs, for it was marked "Closed" on the plat. There has evidently been a great deal of looseness about this matter, as is often the case in reference to the organization of country towns and villages. This is substantially the evidence in chief in support of the plaintiff's contentions. At this point we notice the evidence of the Honorable O. S. Marshall, taken in rebuttal. He testifies that he was clerk of the county court of Hancock county, and his father was deputy clerk, and that the plat was recorded while he was clerk of the county, and the recording was done by his father, as deputy clerk; the writing was in the handwriting of his father, and the words marked "Closed" were in the handwriting of his father. This evidence was taken in rebuttal, but it might as well have been taken in chief. Mr. Marshall testifies that his father was a draftsman, and recorded the plat which is filed (Exhibit 6) with the deposition of John Shrader on November 25, 1904. Mr. Marshall's evidence clearly proves that when this plat was filed the word "Closed" was upon it, for the word "Closed" was in the handwriting of his father. Of course, if the word "Closed" was upon the plat as filed, there could be no possible dedication of the street, for that must be held as a reservation of that part of the property described in the plat. Another reason is shown why this is so by the testimony of E. D. Marshall, in which he states that Mr. McDonald stated to him that the streets and alleys where they approach Mr. Wm. P. Gardner's ground, and before they joined his land, would be closed in order to compel him to come to his terms in relation to the streets and alleys. This possibly is an explanation of why First street is marked "Closed." This is the case as made by the plaintiff. The contention of the defendants is, and the evidence tends very strongly to show, that what is called or known as First street has been used by the public generally as a highway in that town up until the granting of the injunction in this case. It is contended by the plaintiff that there is no dedication on the part of the owners of this street to the town of Chester for the benefit of the public. This possibly may be true that there was no actual dedication by the owners of the land, but this evidence tends to show that it has been used for years by the public. It is contended that there was such

an abandonment upon the part of the owners of the property, and an acquiescence in the use of the property by the public, that it acquired an easement in the street, in the absence of express dedication. In this connection, all the evidence tends to show that the ground was open and used in common—promiscuously by the people—and there was never any attempt, so far as the evidence discloses, to do anything in the way of improvement on what is called First street until shortly before the application for this injunction, which was the cause of the plaintiff making his application.

The question then to be considered by the court is whether there was a dedication of this land which is claimed to be First street by the owners of it. There is no evidence in this case that establishes the fact that the town of Chester ever accepted First street as an integral part of the town. There must be not only a dedication of the grounds described in the plat of the town of Chester, but an acceptance by the town, before it could acquire an easement and right to use First street as a part of the municipality. There is no evidence of any action, official or otherwise, of the town of Chester having accepted this plat of land as a part or parcel of the municipal corporation, nor does the evidence in this case tend to show that the corporate powers of Chester ever exercised any municipal authority over that portion of First street that is in controversy in this case. It is true that an acceptance may be shown by proof that the town of Chester assumed and exercised control over the street; that such exercise and control over the street was continuous until by the lapse of time there became an acquiescence on the part of the owners of the land, and thereby the town of Chester acquired an easement. Such acceptance must clearly appear from the evidence, and will not be implied. The Supreme Court of Georgia, in the case of Kelsoe v. Mayor and Town Council of Oglethorpe, has settled more clearly the question of law applicable to this case than any of the cases of our own courts. Cited 48 S. E. 366.

Much stress has been laid upon the fact that the evidence upon the part of the plaintiff tends to show that the word "Closed" was written across First street in the plat which was recorded in the clerk's office. This fact is very strongly controverted by the defendants. The most pregnant circumstance connected with this fact is that it is well established as an incontrovertible fact that, the plat as recorded in the clerk's office, the word "Closed" was written upon it, which tends to show that at the time the plat was recorded First street was closed. The evidence tends to show that, whenever there was an interference with his rights by any one, Shrader asserted his claim and title to the property in dispute—so much so that upon one occasion the city council, through its chairman of the streets and alleys, made an application to Shrader for permission to put up steps at the end of the bridge on First street. There had been very little occasion for Shrader ever to assert his rights to the street, inasmuch as it was used in common, but, when it appeared that it was necessary for him to do so, he promptly did it. He offered to give the bridge to the county court, and they declined it. Ephraim Johnson, one of the witnesses for the defendants, and a

member of the council, states that Shrader claimed First street years before his deposition was taken in this case. The chief reliance of the defendants in this case is that the piece of ground called First street had been promiscuously used by the public. But it is to be remembered that the mere using of a man's private property by the public does not establish a right in the public to use it, nor does such use make it a public road. Two things are necessary and requisite to establish the right in the public to any piece or control of ground for public use as a highway for the benefit of the public: First, there must be a dedication to the public by the owner of the land; second, there must be an acceptance by the authorized public authorities—either of the county or the municipality authorities. As we have seen in this case, if there has been no actual dedication under the evidence—and I am inclined to think there has not been —still there never has been such an acceptance upon the part of the constituted authorities of the town of Chester as would deprive the owners of the land of their right to it.

Upon the question of dedication of First street, the map filed in this case as Exhibit No. 6 with John Shrader's deposition, in the absence of the original plat of the town of Chester as recorded, is the best evidence that the nature of the case admits of, which is proved to be a copy of the original plat, and a literal copy of it; and it supports the statement of Mr. O. S. Marshall, who says that the original plat, as recorded upon the records of the county, shows that First street was closed. I think the great weight of the evidence tends to show that First street was closed. If so, there was never any dedication of it; but, if there was a dedication, there never has been any legal acceptance.

The history of this piece of property, as shown by the evidence in this case, fairly establishes the fact that it was an outlying piece of property—what we would call "commons"—connected with the town, over which there was very little or no occasion for the exercise of any authority. It will be observed that at the time that the plaintiff and his vendor, Shrader, acquired the deed to this land, the street was closed, and that his possession commenced before the filing of the plat when the street was closed, which covers the period Shrader owned the property. Shrader could not be divested of any right he had in the property, even if the street was not closed, because he was the owner in fee of the land when the plat was filed; and, in order to deprive him of his right to the title to the property, it would have to be acquired in some legal way. He conveyed whatever rights he had to Pitcairn, and, the town having acquired no rights against him, it can have no rights against the plaintiff in this action.

The plaintiff, Pitcairn, is entitled to the injunction prayed for, and it is so ordered.